## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELIEZER CEPEDA<br>177 South Street<br>Freehold, NJ 07728<br><br>    Plaintiff,<br><br>    v.<br><br>NITTO, INC.  d/b/a<br>NITTO DENKO AUTOMOTIVE-<br>NEW JERSEY<br>1990 Rutgers Blvd.<br>Lakewood, NJ 08701<br><br>    Defendant. | CIVIL ACTION<br><br>No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Eliezer Cepeda (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1.      This action has been initiated by Plaintiff against Defendant for violations of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), and the New Jersey Law Against Discrimination ("NJ LAD"). Plaintiff asserts, *inter alia*, that he was unlawfully terminated by Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under the laws of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in

order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in <u>International Shoe Co. v. Washington</u>, 326 U.S. 310 (1945) and its progeny.

4.     Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because substantially all of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5.     Plaintiff is proceeding herein under Title VII and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a Notice of Right to Sue letter from the EEOC.

## PARTIES

5.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.     Plaintiff is an adult individual, with an address as set forth in the above-caption.

7.     Defendant Nitto, Inc., doing business as Nitto Denko Automotive-New Jersey, is a manufacturer of materials for the automotive industry and a subsidiary of the Nitto Denko Corporation (a Japanese chemical and industrial corporation), with an address as set forth in the above-caption.

8.     At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

2

## FACTUAL BACKGROUND

9.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is Latino and has a dark-skin complexion.

11.     Plaintiff was initially hired by Defendant as a Helper at its Lakewood, New Jersey plant in 2015.

12.     In or about June of 2015, Plaintiff began training _and working_ as a machine Finishing Operator, a job which normally provided higher pay than Plaintiff's Helper position.

13.     Despite completing training and working as a Finishing Operator, Plaintiff was paid the same rate from when he was hired as a helper until the end of his employment with Defendant.

14.     During Plaintiff's employment with Defendant, he was passed over for a permanent Finishing Operator position (at a higher pay rate) in favor of a Caucasian coworker with less experience than Plaintiff.[1]

15.     Defendant allegedly[2] had a job-bidding policy (which applied to open positions such as the one described above) that was based on seniority and qualifications; however, Defendant's Human Resources Manager, Susan Herbert (_hereinafter_ "Herbert"), admitted to Plaintiff during his employment that Defendant's hiring/promoting practice was not strictly enforced and it was more dependent on who liked you and "pulling strings."

---

[1] This is not intended to be an exhaustive list of the discriminatory actions taken towards Plaintiff while he was employed with Defendant.

[2] That is, according to Defendant's "Position Statement" (also known as an "Answer") which was submitted to the Equal Employment Opportunity Commission ("EEOC"), by Defendant's Human Resources Manager Susan Herbert in response to Plaintiff's Charge of Discrimination.

16.     In or about September of 2015, Plaintiff complained to Defendant's management, including but not limited to his immediate supervisor Scott Peterson, who then directed Plaintiff to Herbert, that he was being paid in a discriminatory manner because he was not being paid the correct rate and was still being paid the same rate as when he started as a Helper (despite the fact that he was performing work as a Finishing Operator).

17.     Herbert dismissed Plaintiff's aforementioned concerns; therefore, on or about the next day, Plaintiff returned with the employee handbook to further inquire and express his concerns of discrimination with Herbert.

18.     In the second September 2015 meeting, Herbert told Plaintiff that it wasn't Herbert's first rodeo "with you kind of people" (Plaintiff took this to mean those of his race, national origin, and/or color); Plaintiff told Herbert he believed he was being discriminated against because of his race/ethnicity. In response, Herbert told Plaintiff he was annoying and frustrating her (by again bringing up his concerns of discrimination).

19.     Both Herbert and the other supervisor present at the second September 2015 meeting, Eric Pike, were Caucasian.

20.     Herbert's conduct during both September 2015 meetings with Plaintiff was dismissive and hostile, and at one point during the second meeting, Herbert physically ripped an employee handbook from Plaintiff's hands.

21.     After the second September 2015 meeting, Plaintiff was terminated by Defendant later on that same day after making his complaint of discrimination. The reason given for Plaintiff's termination was because he "spoke out" (i.e. complained of discriminatory treatment and concerns of race/national origin/color discrimination to Herbert).

22.     Upon information and belief, Defendant failed to properly investigate Plaintiff's September 2015 complaint of discrimination and instead terminated Plaintiff because of his race, national origin, color, and/or in retaliation for Plaintiff's protected complaint(s) of discrimination.

**Count I**
**Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")**
**(Discrimination based on National Origin, Race, and/or Color & Retaliation & Hostile Work Environment)**

23.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

24.     Defendant employed fifteen (15) or more employees for each working day in each of the 20 or more calendar weeks in the current or preceding calendar year.

25.     Plaintiff is dark-skinned Latino male.

26.     Upon information and belief, Plaintiff was denied a promotion, denied a pay raise, and ultimately terminated from Defendant because of race, national origin, and/or color.

27.     Upon information and belief, Plaintiff was also terminated because he complained of discrimination based on his race, national origin, or his color to Defendant's management.

28.     Plaintiff was also subjected to a hostile work environment during his period of employment due to his race, color, and/or national origin through disparate treatment, pretextual admonishment, and demeaning and/or discriminatory treatment towards him.

29.     Defendant's harassment of Plaintiff was severe and pervasive and interfered with Plaintiff's work to the extent that Plaintiff had to complain to higher level managers on several occasions in advance of his termination from Defendant.

30.     These actions as aforesaid constitute violations of Title VII.

## Count II
## Violation of the New Jersey Law Against Discrimination ("NJ LAD")
### (National Origin, Race, and/or Color Discrimination & Retaliation & Hostile Work Environment)

31.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

32.     Plaintiff re-asserts and re-alleges each and every allegation as set forth in Plaintiff's First Cause of Action, as such actions constitute identical violations of the NJ LAD in this case.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.      Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date he first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C.      Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

KARPF, KARPF & CERUTTI, P.C.

By:      _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: August 1, 2016